1       UNITED STATES DISTRICT COURT
        MIDDLE DISTRICT OF FLORIDA
2            ORLANDO DIVISION
         Case No. 6:18-mj-1069
3         Case No. 6:18-cr-34

4   . . . . . . . . . . . . . . .
    UNITED STATES OF AMERICA,     :
5                                 :
             Plaintiff,           :       Orlando, Florida
6                                 :       February 8, 2018
             v.                   :       11:02 a.m.
7                                 :
    FABIO LUIS VALDARNINI,        :
8                                 :
             Defendant.           :
9   . . . . . . . . . . . . . . .

10


11   EXCERPT TRANSCRIPT OF PRELIMINARY/DETENTION HEARING
              TESTIMONY OF DANA CHMEIL
12      BEFORE THE HONORABLE THOMAS B. SMITH
           UNITED STATES MAGISTRATE JUDGE

13

14  APPEARANCES:

15

16  Counsel for Plaintiff:     Chauncey A. Bratt

17

18  Counsel for Defendant:     Karla M. Reyes

19

20

21  Court Reporter:    Amie R. First, RDR, CRR, CRC, CPE
                       Federal Official Court Reporter
22                     401 West Central Boulevard, Suite 4600
                       Orlando, Florida  32801
23                     AmieFirst.CourtReporter@gmail.com

24  Proceedings recorded by FTR Gold Digital Recording.

25  Transcript produced by Computer-Aided Transcription.

**INDEX OF PROCEEDINGS**

**GOVERNMENT WITNESS**

|  | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Dana Chmiel | 4 | 10 | 14 | |

```
 1                  P R O C E E D I N G S
 2                    (Beginning of excerpt)
 3                          * * * * *
 4          THE COURT:  Case Number 6:18-mj-1069, United
 5  States of America versus Fabio Luis Valdarnini.
 6          May we have your appearances, please?
 7          MR. BRATT:  Good morning, Your Honor.  Chauncey
 8  Bratt for the United States.  And with me is Special Agent
 9  Dana Chmiel from the Secret Service.
10          THE COURT:  Good morning.
11          MS. REYES:  Good morning, Your Honor.  Assistant
12  Federal Defender Karla Reyes on behalf of the defendant.
13          THE COURT:  Good morning.
14          All right.  We're here for a detention hearing and
15  a preliminary hearing, as I understand it.
16          Is the Government ready to proceed?
17          MR. BRATT:  We are, Your Honor.
18          THE COURT:  Go right ahead.
19          MR. BRATT:  Thank you, Your Honor.
20          Your Honor, the Government would call Special
21  Agent Dana Chmiel to the stand.
22          THE DEPUTY CLERK:  Please raise your right hand to
23  be sworn.
24          (Witness sworn.)
25          THE WITNESS:  Yes, I do.
```

```
 1            THE DEPUTY CLERK:  Please be seated.
 2            State your name and spell your name for the
 3   record, please.
 4            THE WITNESS:  My name is Dana Chmiel, C-H-M-I-E-L.
 5            THE COURT:  Go right ahead, sir.
 6            MR. BRATT:  Thank you, Your Honor.
```

**DIRECT EXAMINATION**

BY MR. BRATT:

Q    Special Agent Chmiel, where do you work?

A    U.S. Secret Service.

Q    And how long have you worked there?

A    Approximately 17 years.

Q    And can you summarize briefly for the Court your experience in access-device fraud investigations?

A    In that 17 years I've done numerous, dozens of counterfeit credit card investigations, fraudulent credit card investigations involving skimmers, fraudulent access devices and whatnot.

Q    And you've been involved in the investigation of the defendant in this case; is that correct?

A    Yes.

Q    Do you see him here today?

A    Yes.

Q    Could you identify him?

A    He's right there.

```
 1              MR. BRATT:  May the record indicate that
 2   Agent Chmiel has identified the defendant, Your Honor?
 3              THE COURT:  Yes, sir.
 4              MR. BRATT:  Your Honor, may I approach
 5   Agent Chmiel with a copy of the criminal complaint?
 6              THE COURT:  You can.
 7              And I understand how it is in different
 8   courtrooms, but here you don't have to ask me permission to
 9   approach a witness.
10              MR. BRATT:  Thank you, Your Honor.
11              THE COURT:  You're welcome.
12   BY MR. BRATT:
13   Q    Agent Chmiel, do you recognize this document that's in
14   front of you?
15   A    I do.
16   Q    And what is it?
17   A    It's a criminal complaint signed by me.
18   Q    And signed by the Court in this matter?
19   A    Yes, sir.
20   Q    Is there anything attached to that criminal complaint?
21   A    Yes.  There is three applications for search warrants
22   as well as my affidavit.
23   Q    And what is the date of the criminal complaint and
24   affidavit?
25   A    It's dated February 1st, 2018.
```

```
 1   Q    Now, to the best of your knowledge, is the information
 2   in this affidavit true and accurate today just as it was at
 3   the time you signed it?
 4   A    Yes, it is.
 5   Q    Now, in this criminal complaint you discuss coming
 6   into contact with the defendant in this case; is that
 7   correct?
 8   A    Yes.
 9   Q    And where did you come into contact with him?
10   A    At Disney's Art of Animation hotel.
11   Q    And that's in Orange County?
12   A    Yes, it is.
13   Q    Now, when you came into contact with the defendant, in
14   addition to what's described in your complaint, did he
15   provide -- did you receive from him identification that he
16   had on him?
17   A    I did.
18   Q    And how many copies of identification did you obtain?
19   A    At least two that I can remember.
20   Q    And did one of those appear to be, you know, based on
21   your further investigation, a legitimate piece of
22   identification, identification document?
23   A    One of them appeared to be a genuine Brazilian
24   driver's license and the second a fraudulent or counterfeit
25   Brazilian driver's license with a different name on it.
```

| | |
|---|---|
| 1 | Q And that second driver's license you're mentioning, it |
| 2 | had the defendant's picture on it; is that correct? |
| 3 | A Yes, it did. |
| 4 | Q But it had a different name on it? |
| 5 | A Yes. |
| 6 | Q Do you recall what that name was? |
| 7 | A It was Rodrigo Bueno. |
| 8 | Q Now, based on your investigation, was that name used |
| 9 | at any other time in events related to this investigation? |
| 10 | A Yes. It was the name that was used to reserve the |
| 11 | room which the defendant was sitting -- or used as staying |
| 12 | in. |
| 13 | Q And in your investigation, were you able to determine |
| 14 | whether that the credit card used to reserve that room was |
| 15 | counterfeit or it was an unauthorized credit card number |
| 16 | that was used to reserve that room? |
| 17 | A Yes, I was. |
| 18 | Q And it was, in fact, an unauthorized number? |
| 19 | A Yes. It was compromised. |
| 20 | Q Now, you mentioned that a number of gift cards and -- |
| 21 | or credit cards were recovered from the defendant's hotel |
| 22 | room; is that correct? |
| 23 | A Correct. |
| 24 | Q Approximately how many were recovered? |
| 25 | A It was 125. |

```
 1  Q    And were these -- can you describe the general nature
 2  of these cards?
 3  A    These were genuine plastic Mastercard and/or Visa
 4  prepaid cards.
 5  Q    And had some of them been encoded with credit card
 6  numbers?
 7  A    Yes.
 8  Q    Had all of them been encoded?
 9  A    No.
10  Q    Did you also locate in the room any other devices?
11  A    Yes.  I located an MSRX6 reencoder/skimmer.
12  Q    Now, do you know, after your initial contact with the
13  defendant, at some point did the hotel cleaning service
14  come and conduct some cleaning in the room?
15  A    Yes.
16  Q    And did they look at anything else that you believe is
17  relevant to this case during that cleaning?
18          MS. REYES:  Objection.  It's leading.
19          THE COURT:  I don't think that's a leading
20  question because I don't think it suggests the specific
21  answer.
22          So overruled.
23          THE WITNESS:  Yes.  The house cleaning did --
24  Disney investigators did notify me that housekeeping
25  discovered an embosser in the room.
```

```
 1  BY MR. BRATT:
 2  Q    And can you describe what an embosser would be used
 3  for?
 4  A    An embosser is a machine, an analog machine used to
 5  put a plastic credit card access device of any type into,
 6  and you can emboss names, numbers, whatever you want on it.
 7  Q    And did you obtain a seizure warrant to obtain that
 8  embossing device?
 9  A    I did.
10  Q    And it's in your custody now?
11  A    Yes, it is.
12  Q    Now, were you able to have any discussions with
13  immigration authorities to determine whether the defendant
14  has been to the United States before?
15  A    I was able to discover through State Department
16  documents that the defendant has entered the United States
17  multiple times as far back as -- that they searched -- of
18  2014.
19  Q    And has he stayed here for a lengthy amount of time?
20  What's been the nature of the stays?
21  A    It appeared to be, by the documents, that they were
22  one- to two-week stays.  I could only assume for leisure.
23          MR. BRATT:  Your Honor, I have no further
24  questions at this time.
25          THE COURT:  Cross-examination?
```

```
 1            MS. REYES:  Your Honor, I would request any Jencks
 2   material.
 3            THE COURT:  Is there any, Mr. Bratt?
 4            MR. BRATT:  There is, Your Honor.
 5            THE COURT:  Ms. Reyes, we'll give you a moment to
 6   review it.
 7            MS. REYES:  Yes, Your Honor.  Thank you.
 8            (Pause in proceedings.)
```

### CROSS EXAMINATION

```
10   BY MS. REYES:
11   Q    Good morning, Special Agent Chmiel.
12   A    Good morning.
13   Q    Did I pronounce it correctly?
14   A    It's Chmiel.
15   Q    Chmiel?
16   A    Yep.
17   Q    On that -- was it a morning, afternoon, evening when
18   you came into contact with my client?
19   A    Afternoon.
20   Q    Okay.  That afternoon, was he with other people?
21   A    Yes.
22   Q    And how many other people was he with?
23   A    Three.
24   Q    And was he the main one that you were talking to that
25   afternoon?
```

```
 1  A    I would say we were trying to speak to all of them
 2  equally.
 3  Q    Was he -- did he give you access to his passport?
 4  A    Yes.
 5  Q    Did he point to you where it was located in the room?
 6  A    Yes.
 7  Q    And when you asked him for his I.D.s, he provided you
 8  those two I.D.s that you mentioned?
 9  A    Yes.
10  Q    Did he try to run from you?
11  A    Run?
12  Q    Right.
13  A    No.
14  Q    Okay.  Was he violent towards you in any way?
15  A    I would say that at most he had a severe attitude when
16  I was asking him for his identification.
17  Q    At any point that afternoon did you feel like you were
18  in danger from him?
19  A    Of him specifically, no.  To be perfectly honest, when
20  I was in a room with four unknown individuals and the only
21  other people in there with me were Disney employees, I
22  wasn't 100 percent comfortable with that situation.
23  Q    Okay.  And you described him at worst with a, quote,
24  severe attitude?
25  A    Correct.
```

```
 1   Q    Okay.  Did your investigation reveal whether this,
 2   quote, Rodrigo Bueno is, in fact, a person?
 3   A    Not at this time.
 4   Q    Do you know whether or not Mr. Valdarnini was the one
 5   -- Valdarnini was the one who actually paid for the room?
 6   A    At this time we have -- since that day, we have
 7   obtained voice recordings of individuals calling in to
 8   reserve the room.
 9   Q    Okay.  And when you spoke to state authorities, did
10   you determine that he is here legally?
11   A    Yes.
12   Q    And you testified that he's entered the United States
13   multiple times since 2014?
14   A    Correct.
15   Q    Okay.  His -- is he here on a tourist visa?
16   A    Yes.
17   Q    And is that good for six months at a time?
18   A    I believe so, yes.
19   Q    Okay.  And does his expire 2025?
20   A    I believe that's correct.
21   Q    Has your investigation revealed whether or not or what
22   date he entered this last time?
23   A    Yes.  If I'm not mistaken, it was January 24th.
24   Q    When he has stayed in the United States one to two
25   weeks, has it been mostly in Miami, Florida?
```

```
1    A    Yes.
2    Q    Has your investigation revealed whether or not he has
3    any family or friends in Miami, Florida?
4    A    Has not revealed that.
5    Q    Has your investigation revealed where he is from?
6    A    Yes.  São Paulo, Brazil.
7    Q    Okay.  And does he have currently in his possession,
8    does he have a Brazilian passport?
9    A    In my possession, yes.
10   Q    So he cannot travel to Brazil without that; is that
11   correct?
12   A    Not entirely correct.  If he wanted to, he could go to
13   the embassy in Miami and explain he doesn't have his
14   passport and they could give him a temporary document that
15   he could travel home.
16   Q    Do you also have his Brazilian identification?
17   A    Yes.
18   Q    Could he go to the embassy without that Brazilian
19   identification?
20   A    I couldn't be 100 percent sure about that, how they
21   would handle that if he arrived.
22   Q    Okay.  Has your investigation revealed whether he's
23   part of a larger ring of people trying to make these
24   fraudulent documents?
25   A    Yes.  The best of my observation, it appears that him
```

```
 1  and the other three at a minimum are the ones involved in
 2  some sort of fraud.
 3  Q    Okay.  But the question is, do you believe that
 4  there's a larger organization that they are a part of?
 5  A    At this time, I have no other information of any other
 6  people.
 7             MS. REYES:  Okay.  Nothing further, Your Honor.
 8             THE COURT:  Any redirect?
 9             MR. BRATT:  Briefly, Your Honor.
10             THE COURT:  Sure.
```

### REDIRECT EXAMINATION

```
12  BY MR. BRATT:
13  Q    Special Agent Chmiel, you were asked a question about
14  whether this Rodrigo Bueno could be connected to the hotel
15  room through voice recordings.  You mentioned some voice
16  recordings?
17  A    Yes.
18  Q    Have investigators been able to make any
19  determinations about who it was who called in to reserve
20  the room and make other purchases related to the room?
21  A    Yes.
22  Q    And who was that?
23  A    A special agent in our office, Roger Fuentes, was able
24  to listen to these voice recordings and determine, after
25  having conversations in Portuguese with the defendant and
```

```
 1  the other three individuals in the room, whom was who.
 2  Q    And is it his belief that the defendant is one of
 3  those individuals who called in in those voice recordings?
 4           MS. REYES:  Objection, Your Honor.
 5           THE COURT:  Well, it's hearsay.  But this is a
 6  bail hearing.
 7           MS. REYES:  I understand.
 8           THE COURT:  All right.  Overruled.
 9           MR. BRATT:  Now --
10           THE COURT:  I'm sorry.  What was the answer to the
11  question?
12           THE WITNESS:  The answer was yes, sir.
13  BY MR. BRATT:
14  Q    Now, you mentioned the possibility that the defendant
15  could go to the Brazilian consulate in Miami and that they
16  might be able to assist with him leaving the country?
17  A    Yes.  I have seen that before.
18  Q    In your experience, are there also other ways that
19  individuals could leave the country even if they didn't
20  have identification documents?
21  A    Sure.  They could leave illegally.  Get on a boat.
22  Walk across the border.  Any number of ways.
23           MR. BRATT:  I have no further questions,
24  Your Honor.
25           THE COURT:  Anything on that?
```

1         MS. REYES: No, Your Honor.

2         THE COURT: All right. Thank you. You can step

3 down, sir.

4         (End of Excerpt: 11:16 a.m.)

5         *****

6

7         C E R T I F I C A T E

8

9      I certify that the foregoing is a correct

10 transcript from the record of proceedings in the

11 above-entitled matter.

12

13 July 2, 2018

14

15    s\  Amie R. First
   Amie R. First, RDR, CRR, CRC, CPE
16 Federal Official Court Reporter
   United States District Court
17 Middle District of Florida

18

19

20

21

22

23

24

25